IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARREN R. SIDWELL, Individually and as Special Administrator of the Estate of DERRICK R. SIDWELL, Deceased,** | |
| **Plaintiff,** | |
| v. | |
| **COUNTY OF JERSEY; PAUL CUNNINGHAM, Sheriff; JERSEY COUNTY SHERIFF'S DEPARTMENT; and KEVIN KLAAS,** | |
| **Defendants.** | No. 05-CV-530-DRH |

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

#### I. Introduction

Before the Court is a motion to dismiss submitted by Defendants Jersey County, Paul Cunningham, the Jersey County Sheriff's Department, and Kevin Klass (collectively, "Defendants") pursuant to **Federal Rule of Civil Procedure 16(b)**. (Doc. 2.) Plaintiff Darren Sidwell, individually and as special administrator of the

Estate of Derrick Sidwell ("Plaintiff"), responds in opposition. (Doc. 10.) For the reasons below, the Court denies Defendants' motion.

## II. Background

Plaintiff brings his action pursuant to **28 U.S.C. § 1983**, **28 U.S.C. § 1343**, the **Illinois Wrongful Death Act 740 Ill. Comp. Stat. 180/1** ("Wrongful Death Act") (against Defendants Cunningham and Klass), and the **Illinois Survival Act, 755 Ill. Comp. Stat. 5/27-6** ("Survival Act") (also against Cunningham and Klass). His core allegation is that Defendants allowed the Decedent, Derrick Sidwell ("Decedent"), to escape and commit suicide while in the custody of the Jersey County Sheriff's Department ("Department," or "Sheriff's Department").

More specifically, Plaintiff alleges that on July 29, 2004, the Decedent was arrested by the Sheriff's Department on a charge of attempting to pass a forged prescription. The next day, Plaintiff continues, the Decedent attempted to commit suicide twice — first by attempting to hang himself and second by attempting to slit his wrists — failing both times. Later that day, after complaining of chest pains, the Decedent was transported to a hospital, where Defendant Klass allegedly removed his restraints and left the area. The Decedent then escaped, ultimately causing his own death by hanging himself by a tree on hospital grounds. (Doc. 1.) On top of these allegations, Plaintiff maintains that within a relatively short time prior to these events, at least two and possibly three inmates committed suicide while in the custody of the Sheriff's Department. Further, Plaintiff alleges that the Illinois

Department of Corrections, before the Decedent's death, issued directives to the Department concerning its inadequate policies relating to suicidal inmates. (*Id.*)

Defendants advance several arguments in support of dismissal. First, they argue that the individual Defendants — Cunningham and Klass — are entitled to qualified immunity. Second, they maintain that Plaintiff has failed to sufficiently allege a constitutional violation. Third, they contend that even if Plaintiff did sufficiently allege a constitutional violation, Defendants Cunningham, Jersey County, and the Jersey County Sheriff's Department would be immune from suit. Fourth and finally, they argue that Defendants Cunningham and Klass are immune under the **Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 et seq.** ("Tort Immunity Act").

Plaintiff disagrees. He argues that Cunningham and Klass are not entitled to qualified immunity because they were aware of a serious risk of harm to the Decedent and were deliberately indifferent to that risk. Further, Plaintiff argues that he has adequately alleged an official-capacity claim and a constitutional violation. Finally, Plaintiff maintains that the Tort Immunity Act provides neither Cunningham nor Klass with immunity in this instance.

### III. <u>Analysis</u>

#### A. **Motion to Dismiss Standard**

When ruling on a motion to dismiss for lack of subject matter jurisdiction under **Federal Rule of Civil Procedure 12(b)(6)**, a court must accept

the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in plaintiff's favor. ***Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001)**. The court must then determine "whether relief is possible under any set of facts that could be established consistent with the allegations." ***Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir 1992)** (citing ***Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)**). A motion to dismiss tests the sufficiency of the complaint, not its merits. ***Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)**. A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief. ***Travel All over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996)**. To survive a motion to dismiss, "[c]omplaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule." ***Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)**.

    **B.**  **Plaintiff's Section 1983 Claims**

      1.  *Sufficient Allegation of a Constitutional Violation*

"For a **§ 1983** claim to exist, there must be a deprivation of either a constitutional right or a federal statutory right, and the action must be taken under color of state law." ***Discovery House, Inc. v. Consolidated City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003)** (citing ***Maine v. Thiboutot*, 448 U.S. 1 (1980)**). Here, Plaintiff alleges a Fourteenth Amendment violation, which is the proper basis for relief for a pretrial detainee. ***Butera v. Cottey*, 285 F.3d 601, 605**

**(7th Cir. 2002)**.  The test applied to a pretrial detainee's Fourteenth Amendment claims is the same as the test applied in the Eighth Amendment context; under both tests, the relevant question is whether the individual was protected against deliberate indifference as to his basic needs.  ***Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003)**.  A plaintiff has the burden of demonstrating (1) that the harm visited upon her was objectively serious; and (2) deliberate indifference to her health or safety.  ***Id.***

With regard to the first requirement, Plaintiff has alleged that the Decedent suffered a harm in the form of death by suicide.  Defendants do not contest that this is an objectively serious harm.[1]  Defendants do, however, contest whether Plaintiff has sufficiently alleged that they were deliberately indifferent to the Decedent's health or safety.  (Doc. 3.)

To establish deliberate indifference, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  ***Farmer v. Brennan*, 511 U.S. 825, 842 (1994)**.  "[A] prison official," that is, cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety."  ***Id.* at 837**.  Deliberate indifference may exist where state actors with knowledge of serious risks to inmates

---

[1] And for good reason: a pretrial detainee's suicide has been recognized as precisely that.  ***Cavalieri v. Shepard*, 321 F.3d at 620**.

ignore those risks. *See, e.g.*, **Egebergh v. Nicholson, 272 F.3d 925, 927-28 (7th Cir. 2001)** (finding that deliberate indifference could exist where officers knew of an inmates diabetic condition and neglected to give him an insulin shot); **Sanvil v. McCaughtry, 266 F.3d 724, 739 (7th Cir. 2001)** (finding that deliberate indifference could "easily" exist where prison officials failed to act despite the fact that a suicidal prisoner had covered the window of his cell). Prison officials, that is, are "not allowed to turn a blind eye to the activities of an inmate, particularly one who is suicidal." *Id.* **at 738**.

In this case, Plaintiff has alleged that on July 30, 2004, the Sheriff's Department, with full knowledge that the Decedent had twice attempted to commit suicide earlier that very day — once by attempting to hang himself and once by slitting his wrists — removed his restraints and withdrew from supervision over him while he was in a public hospital facility. The Court finds that this act may amount to a constitutional violation under the Fourteenth Amendment. By leaving a highly suicidal inmate alone and unrestrained in an open hospital facility, in other words, Defendant may have disregarded a serious risk to the Decedent's health and safety. If so, Defendants' conduct would violate the Fourth Amendment. *See* **Sanvil, 266 F.3d at 739**.

Defendants would appear to contest this outcome because, in their view, the causal connection between their failure to restrain and supervise the Decedent and his eventual suicide is severed by the Decedent's escape from the hospital. (Doc.

3.) The Court, however, finds this argument unavailing, at least at this stage in the litigation. This is so because the Court cannot presently say, with the requisite degree of certainty, *see* **Travel All over the World, Inc., 73 F.3d at 1429**, that a highly suicidal inmate's act of leaving a hospital building, while unsupervised, and hanging himself on nearby tree on hospital grounds necessarily severs the link between his death and the conduct of the prison officials who left him unrestrained and unsupervised. *See* **Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir. 1988)** (finding that the question of causation turns on whether the party "set in motion a series of events that [she] knew or should reasonably have known would cause [one's constitutional rights to be violated]"). The Court, it should be noted, has not yet been presented with evidence concerning the length of time between Defendants' withdrawal from supervision and the Decedent's suicide, nor the distance between the room in which the Decedent was allegedly left unattended and the tree from which he tragically hung himself. These and other factors may bear on the question of causation. At this early stage, therefore, and drawing reasonable inferences in Plaintiff's favor, the Court is unable to determine that there is no causal relationship between the acts of Defendants and the Decedent's death. *Compare* **Miller v. Hubbard, No. 02-133-C, 2004 U.S. Dist. LEXIS 13958 (S.D. Ind. June 29, 2004) (Hamilton, J.)** (finding, on a motion for summary judgment, no constitutional violation where an escaped inmate committed suicide, but where (1) the inmate escaped while under direct officer supervision; (2) the inmate shot the

officer while escaping; and (3) the suicide took place after a not-inconsequential lapse of time).

### 2. *Qualified Immunity*

"[G]overnment officials performing discretionary functions are entitled to qualified immunity from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." **Perry v. Sheahan, 222 F.3d 309, 315 (7th Cir. 2000)**. To determine whether qualified immunity protects the conduct of government officials, a court, at the dismissal stage, must undertake a two-part inquiry: First, the court must determine whether a violation of a constitutional right has been successfully alleged. Second, if such a violation has been alleged, the court must decide whether the underlying constitutional right was clearly established at the time the events took place. **Saucier v. Katz, 533 U.S. 194, 201 (2001)**; **Cavalieri, 321 F.3d at 620**.

Here, Defendants do not contest the second prong above. Nor could they, as the constitutional right in question was clearly established at the time of the events in this case. *See, e.g.*, **Sanvil, 266 F.3d at 739** ("[I]t was clearly established, long before 1998, 'that prison officials will be liable under Section 1983 for a pretrial detainee's suicide if they were deliberately indifferent to a substantial suicide risk.'" (quoting **Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992)**). Thus, because the Court has found that Defendants' alleged conduct may constitute a constitutional violation under the Fourteenth Amendment, the Court cannot presently determine

that Defendants are entitled to a finding of qualified immunity.

### 3. *Official Capacity/Municipal Liability*

Municipalities and other local-government entities qualify as persons and may be sued under **42 U.S.C. § 1983**. ***Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978)**. An Illinois sheriff, also, may be sued in his official capacity, provided he is sued for conduct performed pursuant to his duties as the chief law-enforcement officer of a county. ***Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001)**. Parties may sue these entities for constitutional violations caused by municipal policies or customs. ***Monell*, 436 U.S. at 691**.

An unconstitutional policy or custom can take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." ***Rashe v. Beecher*, 336 F.3d 588, 597 (7th Cir. 2003)**. The policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." ***Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)**. One way a plaintiff can establish liability is "'by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least

condoned, thus in either event adopting, the misconduct of subordinate officers." *Id.* (quoting ***Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995)**).

Here, Plaintiff has alleged a pattern of inmate suicides beginning in 2002 and ending with the Decedent's death in 2004. Plaintiff has further alleged that IDOC issued a directive to the Sheriff's Department concerning the inadequacy of its measures to combat inmate suicides, and that the Decedent twice attempted to commit suicide on July 30, 2004 while in the custody of the Department before ultimately succeeding later that day. (Doc. 1.) The Court finds these allegations sufficient to survive Defendants' motion to dismiss. If true, that is, Plaintiff's allegations would imply that Defendants had notice of a pattern of inmate suicides, and yet failed to do anything — such as provide employees with proper training — about it. That would potentially establish liability on the part of Defendants.

4. *Illinois Tort Immunity Act*

In Counts III and IV of the Complaint, Plaintiff asserts claims against Defendants Cunningham and Klass pursuant to the Wrongful Death Act and the Survival Act, respectively. Defendants argue that four provisions of the Tort Immunity Act furnish immunity against those claims. The Court addresses each of these provisions below.

i. Section 2-201

**Section 2-201 of the Tort Immunity Act** provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving

the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." **745 Ill. Comp. Stat. 10/2-201**. In order to successfully assert a claim of immunity under this section, a public actor must establish that the act or omission in question is both an exercise of discretion and a policy determination. ***Harinek v. 161 N. Clark St. Ltd. P'Ship*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177 (Ill. 1998)**. "Discretionary acts are those which are unique to a particular public office."[2] ***Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 371, 799 N.E.2d 273 (Ill. 2003)** (citing ***Synder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E. 2d 988 (Ill. 1995)**). Policy decisions are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." ***Van Meter*, 207 Ill. 2d at 373** (citing ***Harinek*, 181 Ill. 2d at 342**).

      Here, the Court is unable to find, at this point, that either Cunningham or Klass is immune under **section 2-201**. Klass, to begin with, was a sheriff's deputy charged with taking the Decedent to the hospital. Based on the information in the pleadings, the Court cannot definitively say that his actions were either policy decisions or unique to his position. Cunningham, further, though a more difficult

---

[2] Ministerial acts, in contrast, are "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." ***Van Meter*, 207 Ill. 2d at 371-72**.

case, still is not entitled to a finding of immunity at this stage of the litigation. Even assuming that his actions are classifiable as policy decisions because he was responsible for balancing competing interests and making judgment calls, it is uncertain whether his acts were unique to his position as Sheriff of Jersey County (and thus discretionary). Though the complaint appears to allege that Cunningham bore at least some responsibility for determining Jersey County's policies with regard to the protection of suicidal inmates, the Court cannot presently ascertain, from the materials before it, whether there were constraints on his decisonmaking.[3] Since such constraints would compromise **section 2-201** immunity, *see, e.g.*, **Harinek, 181 Ill. 2d at 343** (finding that a fire marshal who bore "sole and final responsibility" for planning and executing fire drills and who was under "no legal mandate to perform these duties in a prescribed manner" acted in a discretionary manner); *Synder*, **167 Ill. 2d. at 474** ("Where . . . tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary.'"), the Court cannot, at this time, grant Defendant's motion to dismiss on this basis.

            ii.      Section 2-202

Defendants also argue that Cunningham and Klass are immune from

---

[3] Plaintiff, for his part, suggests that Cunningham may have been obligated to adhere his Department's practices concerning suicidal inmates to the Illinois County Jail Standards. (Doc. 10.)

suit under **745 Ill. Comp. Stat. 10/2-202**. That section provides as follows: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." **745 Ill. Comp. Stat. 10/2-202**. Willful and wanton conduct is defined by the act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." **745 Ill. Comp. Stat. 10/1-210**. The Illinois Supreme Court has held that an officer's failure to act may rise to the level of utter indifference or conscious disregard. ***Doe v. Calumet City*, 161 Ill. 2d 374, 391, 641 N.E.2d 498 (Ill. 1994)**.

Here, Defendants maintain that **section 2-202** provides immunity to both Cunningham and Klass because their conduct was not willful and wanton. Accepting Plaintiff's allegations as true, however, the Court finds that Defendants' alleged conduct — including leaving a highly suicidal inmate alone and unrestrained in a public hospital facility — may constitute utter indifference or conscious disregard, and thus willful and wanton conduct. For this reason, the Court cannot grant Defendants' motion to dismiss on the basis of **section 2-202**.

iii.     Section 2-204

Defendants next argue that Klass and Cunningham are immune from suit under **745 Ill. Comp. Stat. 10/2-204**. That section provides as follows: "Except as otherwise provided by statute, a public employee, as such and acting within the

scope of his employment, is not liable for injury caused by the act or omission of another person." **745 Ill. Comp. Stat. 10/2-204**. Defendants argue that because the Decedent was the party that actually escaped and committed suicide, they did not "cause" his injuries, and thus they are immune. (Doc. 3.)

Defendants, however, have offered scant authority supporting their assertion that the language of **section 2-204** should be interpreted as providing them with immunity. In support of their position, they simply cite to cases suggesting that a statute should be construed in accordance with its plain language, and that **section 2-204**'s plain language counsels in favor of a finding of immunity. Of course, this is only true if the word "caused" in **section 2-204** is interpreted such that an officer's release of an extremely suicidal inmate cannot be said to "cause" the inmate's suicide. An alternate view is that a person "causes" something to happen when she sets events in motion that she knows, or reasonably should know, will cause that thing to occur. *See, e.g*, **Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir. 1988)** (advocating such a view).

Due to the lack of briefing on this issue, and in light of the fact that the Tort Immunity Act is in derogation of the common law and must be strictly construed against the public entity involved, **Van Meter, 207 Ill. 2d at 368**, the Court is unable to dismiss Plaintiff's claims based on **section 2-204** at this time. The Court does not, however, foreclose the possibility that additional briefing, information, or both will lead to a different outcome.

iv.     Section 4-106

Lastly, Defendants maintain that **section 4-106** of the Tort Immunity Act provides them with immunity in this instance. That section provides as follows: "Neither a local public entity nor a public employee is liable for . . . any injury inflicted by an escaped or escaping prisoner." **745 Ill. Comp. Stat. 10/4-106**. Defendants argue that this provision's plain language applies to the instant facts. In their view, because the Decedent was an escaped prisoner, they should not be liable for the injuries he inflicted onto himself. (Doc. 3.) Plaintiff disagrees. From his perspective, **section 4-106** does not extend immunity to state actors in cases where an inmate commits suicide. (Doc. 10.)

The resolution of this issue, of course, depends on how **section 4-106** is interpreted and whether, among other things, the Decedent is classifiable as an escaped or escaping prisoner. Like the issue of **section 2-204** immunity, the issue of **section 4-106** immunity has not been thoroughly briefed by the parties.[4] Accordingly, given that the Court must strictly construe the Tort Immunity Act against Defendants, the Court cannot, at this time, grant Defendants' motion to dismiss. Again, though, the Court does not foreclose the possibility that **section 4-106** immunity may later attach in this case.

---

[4] Defendants' brief in support of the motion to dismiss devotes a total of three paragraphs to the question, citing one case that has little direct applicability to the instant facts and another case standing for the proposition that courts should follow a statute's plain language. (Doc. 3.) Plaintiff responds in one paragraph, citing no authority. (Doc. 10.)

## IV. Conclusion

Therefore, for the reasons stated above, the Court **DENIES** at this time Defendants' motion to dismiss. (Doc. 2.)

**IT IS SO ORDERED**.

Signed this 15th day of May, 2006.

/s/     David  RHerndon
**United States District Judge**